IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| JOSHUA FRAUSTRO and MIGUEL AGUILAR a/k/a KEMIKAL956, <br> *Plaintiffs,* <br><br> v. <br><br> BELCALIS ALMANZAR a/k/a CARDI B, WARNER MUSIC GROUP CORP, and ATLANTIC RECORDING CORPORATION <br> *Defendants.* | § § § § § § § § § § § | Civil Action File No. 7:24-CV-00264 |

**PLAINTIFFS' RESPONSE TO  DEFENDANTS' RENEWED MOTION TO DISMISS (ECF NO. 55), DEFENDANT'S MOTION TO STRIKE (ECF NO. 60) AND DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS (ECF NO. 62)**

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs Joshua Fraustro and Miguel Aguilar (collectively, "Plaintiffs"), asks the Court to deny Defendants' motion to strike and renewed motion to dismiss this action filed by Defendants Belcalis Almanzar ("Almanzar") and Defendants Atlantic Recording Corporation  and Warner Music Group Corp. (together, the "Corporate Defendants," and collectively with Almanzar, ("Defendants"))

### I.   BACKGROUND

1. On March 13, 2025, the case was called on the docket. The Court issued ruling granting [**ECF No. 47**] Opposed Motion for Leave to File Second Amended Complaint for the reasons stated on the record. The Court further issued ruling denying [**ECF No. 42**] Motion for Leave to File to Intervene and Petition in Intervention for the reasons stated on the record. Additionally, the Court issued rulings denying [**ECF No. 22**] Motion to Dismiss and [**ECF No. 54**] Motion to Dismiss [**ECF No. 15**] Amended Complaint/Counterclaim/Crossclaim etc. without prejudice to refiling to address Plaintiff's Second Amended Complaint.

2. On April 3, 2024, Defendants filed their renewed Motion to Dismiss.  **ECF No. 55.**

3. On April 13, 2025, Plaintiffs filed their Second Amended Complaint.  **ECF No. 57** along with a Sworn Affidavit **ECF 57-2**.

4. In Plaintiffs' Second Amended Complaint, their stated claims for relief are for tortious interference; defamation; Unfair Competition; Vicarious Infringement; Contributory Infringement; and Misappropriation of Intellectual Property.. **ECF No. 57.**

5. On April 28, 2025, Defendants filed their Motion to Strike. **ECF No. 60.**

6. On May 1, 2025, Defendants filed their Reply in Support of their renewed motion to dismiss   **ECF No. 62.**

7. The court has set this matter for motions hearing to be heard on June 17, 2025.

## II.   ARGUMENT & AUTHORITIES

### A. THE FIFTH CIRCUIT IS CLEAR THAT THE COURT HAS JURISDICTION OVER THE MATTER AND THE PARTIES

8. When the district court rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper. *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir.2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.1994)).

9. The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir.2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999)) (additional citations omitted).

10. Defendant Almanzar alleged in her motion to dismiss that this Court did not have jurisdiction over this suit because Defendant Almanzar did not purposefully avail herself of the benefits and protections of this forum by establishing minimum contacts with Texas. **ECF No. 55.**

11. Defendant Almanzar did not attach any affidavits in support of her motion to dismiss. **Id.**

12. In a Rule 12(b) motion, the court must accept the plaintiff's allegations as true. *Smith Regional Transit Authority*, 756 F.3d 340 (2014).

13. Plaintiffs have shown (1) that Defendants have purposefully availed themselves of the benefits and protections of this forum by establishing "minimum contacts" with Texas and (2)

that this Court's exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

14. General jurisdiction over an out-of-state musical artist who routinely performs in the forum state requires that the artist's affiliations with the state be so continuous and systematic as to render them essentially at home in the forum state. *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331 (2020), *PetroSaudi Oil Services Ltd. v. Hartley*, 617 S.W.3d 116 (2020).

15. The Supreme Court has established that general jurisdiction exists when a defendant's contacts with the forum state are substantial, continuous, and systematic, making the defendant essentially at home in the forum state. *Cunningham v. CBC Conglomerate, LLC*, 359 F.Supp.3d 471 (2019), *Nunes v. NBCUniversal Media, LLC,* 582 F.Supp.3d 387 (2022).

16. On and around December 15, 2017, first availed herself of the benefits and protections of this forum in Houston, Texas as one of the lead music artists at the "Day for Night 2017" music event, generating millions of dollars in profits in Texas.[1]

17. On and around April 6, 2018, Defendant Belcalis Almanzar a/k/a Cardi B released her debut album, poignantly titled "Invasion of Privacy."[2] It debuted atop the Billboard Hot 200 charts earning 255,000 album-equivalent units in its first week, with 103,000 coming from pure album sales. It is certified double platinum by the RIAA.[3]  This is a critical factor in considering and calculating Plaintiffs' damages.

18. On and around May 4, 2018, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in Dallas, Texas as the lead music artist at her event at Fair Park, Dallas, Texas, generating millions of dollars in profits in Texas.[4]

19. On and around May 5, 2018, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in Austin, Texas as the lead music artist at her event at

---

[1] Day For Night 2017 Houston Line-up, Photos & Videos Dec 2017 – Songkick

[2] The Source |Today in Hip-Hop History: Cardi B's Debut Album, 'Invasion of Privacy' Turns One-Year-Old
[3] Invasion of Privacy (album) - Wikipedia

[4] Playboi Carti, Bun B, and Ski Mask The Slump God Dallas, Fair Park, 04 May 2018 – Songkick

the Circuit of the Americas, Austin, Texas, generating millions of dollars in profits in Texas.[5]

20.     On and around May 6, 2018, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in Houston, Texas as the lead music artist at her event at Sam Houston Race Park, Houston, Texas, generating millions of dollars of profit in Texas.[6]

21.     On and around March 1, 2019, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in Houston, Texas as the sole music artist at her event at Rodeo Houston, Houston, Texas, generating millions of dollars of profit in Texas.[7]

22.     On and around March 13, 2019, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in South Padre Island, Texas as the sole music artist at her event "Cardi B Beach Bash Music Festival 2019" at the Isla Grand Resort & Hotel, South Padre Island, Texas, generating millions of dollars of profit in Texas.[8]

23.     On or around May 21, 2019, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in El Paso, Texas as the sole music artist at her event "Cardi B" at the El Paso County Coliseum, El Paso, Texas, generating millions of dollars of profit in Texas.[9]

24.     On or around October 4 through October 6, 2019, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in Austin, Texas as a lead artist at the Austin City Limits Music Festival, Austin, Texas, generating millions of dollars of profit in Texas.[10]

25.     On or around October 8, 2019, Defendant Belcalis Almanzar a/k/a Cardi B again availed herself of the benefits and protections of this forum in El Paso, Texas as the sole music artist at her

---

[5] Playboi Carti, Bun B, and Ski Mask The Slump God Austin, The Circuit of the Americas (cota) Lot A, 05 May 2018 – Songkick
[6] Playboi Carti, Bun B, and Cozz Houston, Sam Houston Race Park, 06 May 2018 – Songkick

[7] Cardi B Houston, Rodeo Houston, 01 Mar 2019 – Songkick

[8] Beach Bash Music Festival 2019 South Padre Island Line-up, Photos & Videos Mar 2019 – Songkick

[9] Cardi B El Paso, El Paso County Coliseum, 21 May 2019 – Songkick
[10] Austin City Limits Music Festival - Weekend One 2019 Austin Line-up, Photos & Videos Oct 2019 – Songkick

event "Cardi B" at the El Paso County Coliseum, El Paso, Texas, generating millions of dollars of profit in Texas.[11]

26. From 2020-2022, there were little to no public music events due to the COVID-19 Pandemic.[12]

27. During this period working from home in McAllen, Texas, Plaintiffs created the musical composition "Greasy Frybread", which was released under the label Tattoo Muzik Group Studios on November 9, 2021. *See Footnote 2.*

28. Defendant Belcalis Almanzar a/k/a Cardi B, along with other named Defendants, stole the song from Plaintiffs; or in the alternative, without their permission and consent. The song "Enough (Miami)" by Defendant Belcalis Almanzar a/k/a Cardi B was released under the label of co-defendant Atlantic Records on March 15, 2024.

29. Post-Pandemic, the music industry experienced a surge in music content ownership infringements.[13]

### B. THE FIFTH CIRCUIT IS CLEAR THAT PLAINTIFFS HAVE MET THEIR BURDEN FOR ESTABLISHING PERSONAL JURISDICTION OVER THE PARTIES.

30. Plaintiffs have met their burden for proving a *prima facie* case for personal jurisdiction over the Defendants. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994).

31. Plaintiffs have shown *prima facie* that Defendants have purposefully availed themselves to the burdens and protections of this forum and the courts exercise of jurisdiction would not offend traditional notions of Fair play and substantial justice. *Id at 647.*

32. Routinely profiting in the forum state can give the forum jurisdiction over a defendant accused of conversion by copyrighting others' work product after publishing, provided that the defendant's actions demonstrate purposeful availment of the forum state. *Loyalty Conversion Systems*

---

[11] Cardi B El Paso, El Paso County Coliseum, 08 Oct 2019 – Songkick

[12] Impact of the COVID-19 pandemic on the music industry - Wikipedia

[13] Legal "Treble": Copyright Infringement Lawsuits Leave Several Companies Facing the Music | University of Miami Law Review; Annual revenue from music copyright climbs to $41.5bn; The Pandemic Effect: Music Creation And Consumption Are Changing Fast

*Corporation v. American Airlines, Inc.*, 66 F.Supp.3d 795 (2014).

33. Based on the facts currently presented before the Court, that is clearly the case here.

34. It is incontrovertible that Defendant Belcalis Marlenis Almánzar has continuous and systematic contact in Texas, and within this District for at minimum the last five (5) years and will continue to do so and have specifically targeted Texas.[14]

### C. AN OUT-OF-STATE CORPORATION THAT SUES AND RECEIVES BENEFITS IN A FORUM STATE MAY BE SUBJECT TO JURISDICTION WITHIN THAT FORUM STATE.

*General Jurisdiction*

35. A court may assert general jurisdiction over foreign, sister-state, or foreign country corporations to hear any and all claims against them when their affiliations with the state are so continuous and systematic as to render them essentially at home in the forum state. P*ervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (2012).

36. This means that if the corporation's activities in the forum state are substantial and continuous, it may be subject to general jurisdiction.

37. Defendant Warner Music Group has continuingly availed itself to the forum state as reflected in the Grande communications piracy case in April 2017 where said defendant sued in the western district of Texas obtaining a jury award between 46 to $47 million in damages in November 2022.

38. Furthermore, defendant Warner Music group, amongst others sued and Waco division of the western district of Texas for copyright infringement in which a motion to dismiss was denied.

39. Moreover, courts have said that releasing music in the forum state by and through streaming platforms are retailers that distribute nationally subjects them to that forum.

40. More specifically specific jurisdiction applies because the claim arises out of a relates to the artist's contacts within the forum and the artists purposely directed activities at that forum state. *Daimler AG v. Buma*n, 571 U.S. 117 (2014).

---

[14] Cardi B Tour 2026: Dates, Cities, and Ticket Information

41. Also, in the Altice USA case (2023) the court ruled that a defendant can be sued in a forum for any matter regardless of whether it arises there.

*Purposeful Availment*

42. In the case of *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, the court found that a foreign software developer did not purposefully avail itself of the privileges and benefits of conducting business in Texas. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214 (2012).

43. This indicates that merely suing and receiving benefits in a forum state may not be sufficient to establish jurisdiction unless the corporation's activities are substantial and systematic. Therefore, the Defendant corporation's activities in the forum state are continuous and systematic enough to render it essentially at home in that state.

44. Plaintiffs have shown prima facie Defendants have the requisite minimum contacts with Texas by purposefully directing activities toward Texas and by availing herself of the privileges of conducting activities in Texas. *Pension Advisory Group, Ltd. v. Country Life Ins. Co.,* 771 F.Supp.2d 680 (2011), *Nunes v. NBCUniversal Media, LLC*, 582 F.Supp.3d 387 (2022).

45. Plaintiffs' cause of action arises out of or results from the defendant's forum-related contacts. *Pension Advisory Group, Ltd. v. Country Life Ins. Co.,* 771 F.Supp.2d 680 (2011), *Nunes v. NBCUniversal Media, LLC*, 582 F.Supp.3d 387 (2022), attached Sworn Affidavit.

46. Given the facts presented, the exercise of personal jurisdiction over Defendant Almanzar is both fair and reasonable. *Id.*

47. Plaintiffs have established a prima facie case supporting jurisdiction if the court rules on the motion without an evidentiary hearing. *Cunningham v. CBC Conglomerate, LLC*, 359 F.Supp.3d 471 (2019), *Lansing Trade Group, LLC v. 3B Biofuels GmbH & Co., KG*, 612 F.Supp.2d 813 (2009)

48. Allegations in the plaintiff's complaint are taken as true unless contradicted by the defendant's affidavits, and any genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of the plaintiffs. *Cunningham v. CBC*

*Conglomerate*, LLC, 359 F.Supp.3d 471 (2019).

49. Defendant Almazar failed to provide supporting affidavits or any genuine material conflicts between the facts established by the Plaintiffs.

50. Plaintiffs have prima facie shown that maintaining the suit by the court does not offend the traditional notions of fair play and substantial justice. This involves examining the relationship among the defendant, the forum, and the litigation. *Fintech Fund, FLP v. Horne, 327 F.Supp.3d 1007 (2018)*, *Dillard v. Federal Corporation*, 321 F.Supp.3d 752 (2018).

51. Plaintiffs have prima facie shown Defendant Belcalis Almanzar a/k/a Cardi B has sufficient minimum contacts with Texas and that the exercise of jurisdiction by this court is fair and reasonable.

52. Plaintiffs have prima facie shown the court has personal jurisdiction over Defendant Belcalis Almanzar a/k/a Cardi B in this matter by clearly showing the defendant's purposeful activities directed toward Texas and how the cause of action arises from those activities.

53. The plaintiff has prima facie shown by a preponderance of the evidence that the court has subject matter jurisdiction. *Croy v. United States*, 697 F.Supp.3d 653 (2023).

54. The Court has subject matter jurisdiction under 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 and the parties are citizens of different states. **ECF No. 2., ECF No. 57.**

55. Defendant Belcalis Almanzar a/k/a Cardi B has a personal stake in the outcome of the controversy and therefore the court jurisdiction over the matter. 28 U.S.C. § 1332, *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853 (2003), *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250 (1998), *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326 (1995), *Dixie Electric, LLC v. Jarwin,* Not Reported in Fed. Supp. (2017).

56. Defendant Belcalis Almanzar a/k/a Cardi B can be considered to have consented to the jurisdiction of a forum as she purposefully availed herself of the privilege of conducting activities within that forum, thus invoking the benefits and protections of its laws.

*Corporation v. American Airlines, Inc.*, 66 F.Supp.3d 795 (2014), *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).

57. This principle is supported by the notion that a defendant's purposeful availment of the forum state's laws can justify specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum. *Loyalty Conversion Systems Corporation v. American Airlines, Inc.*, 66 F.Supp.3d 795 (2014), *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011).

58. Routinely profiting in the forum state can give the defendant the benefits and protections of the forum's jurisdiction if the defendant's contacts with the forum state are purposeful and not random, isolated, or fortuitous. The key legal principle is "purposeful availment," which requires that the defendant's contacts with the forum state result from the defendant's own actions to seek some benefit, advantage, or profit from the forum state. *MasterGuard L.P. v. Eco Technologies Intern. LLC*, 441 S.W.3d 367 (2013).

59. For instance, in *Luciano v. SprayFoamPolymers.com, LLC*, the court noted that a nonresident defendant could be subject to the forum state's jurisdiction if it operates a sales and distribution network or directs marketing efforts to the forum state in the hope of soliciting sales. *Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1 (2021). Similarly, in *TV Azteca v. Ruiz*, the court emphasized that the defendant's contacts must be purposefully directed to the state and result from the defendant's own efforts to avail itself of the forum. *TV Azteca v. Ruiz,* 490 S.W.3d 29 (2016).

60. This is wholly analogous to this case.

61. The court may consider the complaint alone, the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Gbalazeh v. City of Dallas, Texas*, 394 F.Supp.3d 666 (2019), *Consumer Data Industry Association v. Texas through Paxton*, 564 F.Supp.3d 506 (2021).

D. **THE COURT HAS GENERAL JURISDICTION OVER ATLANTIC RECORDING CORPORATION AND WARNER MUSIC GROUP CORP BECAUSE CORPORATE DEFENDANTS TARGETED TEXAS OR OTHERWISE AVAILED THEMSELVES TO THE FORUM IN ANY WAY.**

62. To determine whether Atlantic Recording Corporation and Warner Music Group Corp

targeted Texas or otherwise availed itself to the forum, the court is to assess whether the corporation's contacts with Texas were purposeful and substantial, rather than random, fortuitous, or attenuated. The relevant legal principles for establishing personal jurisdiction in Texas are as follows:

    a.    Purposeful Availment: The defendant must have purposefully availed itself of the privilege of conducting activities in Texas, seeking some benefit, advantage, or profit by availing itself of the jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333 (2009). This means the defendant's contacts with Texas must be deliberate and substantial, not random or incidental. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 328 S.W.3d 545 (2010).

    b.    Intentional Efforts to Serve the Texas Market: Evidence that a defendant has physically entered Texas, derived substantial revenue from Texas, or made substantial efforts to distribute products or services in Texas can support a finding of purposeful availment. *TV Azteca v. Ruiz,* 490 S.W.3d 29 (2016). For example, in TV Azteca v. Ruiz , the court found that the defendants purposefully availed themselves of Texas by producing and promoting broadcasts in Texas, selling advertising to Texas businesses, and making efforts to increase their popularity in Texas. *TV Azteca v. Ruiz*, 490 S.W.3d 29 (2016).

    c.    Additional Conduct: Beyond mere knowledge that its products or services would reach Texas, there must be additional conduct indicating an intent to serve the Texas market, such as advertising, establishing channels of communication, or other efforts to exploit the market. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (2007).

    d.    Contractual Relationships: Ongoing business relationships, physical presence, or targeted activities in Texas. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 328 S.W.3d 545 (2010).

63.    Corporate Defendants Atlantic Recording Corporation and Warner Music Group Corp satisfy all of these elements and intentionally targeted Texas or otherwise availed itself to the forum, the court is to assess whether the corporation's contacts with Texas were purposeful and substantial, rather than

random, fortuitous, or attenuated.[15]

64.     It is clear the Defendant Corporations target Texas.[16][17][18]

65.     Warner Music Group has several operations and affiliations in Texas and a presence through their labels and distribution services.[19]

66.     This independent distribution and label services arm supports a wide range of artists, including many in Texas, according to ADA.

67.     Atlantic Recording Corporation has recorded Texas artists.[20]

68.     Atlantic Recording Corporation has a history of signing and releasing records by various artists, including some from Texas. One example is Doug Sahm, who was a Texas-based musician and had recordings released by Atlantic Recording Corporation.[21]

### E.  DEFENDANTS' MOTION TO STRIKE IS WITHOUT MERIT UNDER THE FEDERAL RULES

69.     The Fifth Circuit will generally grant leave to amend a complaint unless one of the five factors is present, indicating that justice would not be served by allowing the amendment.

*Factors Considered by the Court*

70.     The Fifth Circuit examines five considerations in determining whether to grant a party leave to amend a complaint. These factors are:

1. Undue delay
2. Bad faith or dilatory motive on the part of the movant
3. Repeated failure to cure deficiencies by amendments previously allowed
4. Undue prejudice to the opposing party by virtue of allowance of the amendment
5. Futility of the amendment.  *In re Cyrus II Partnership*, 358 B.R. 311 (2007), *Jack v. Evonik Corporation*, 79 F.4th 547 (2023).

---

[15] Atlantic Recording Corp: Revenue, Competitors, Alternatives
[16] A Flood Down In Texas - Single by Stevie Ray Vaughan | Spotify
[17] Atlantic Recording Corp - Company Profile and News - Bloomberg Markets
[18] About WMG | Warner Music Inc.
[19] Warner Music Group has several operations and affiliations in Texas and a presence through their labels and distribution services. - Google Search
[20] Atlantic Recording Corporation has recorded Texas artists - Google Search
[21] 53. Atlantic Recording Corporation has recorded Texas artists - Google Search

*Federal Rules of Civil Procedure*

71.	According to Rule 15(a)(2) of the Federal Rules of Civil Procedure, in all cases other than those where a party may amend its pleading as a matter of course, a party may amend its pleading only with the court's leave. The court should freely give leave when justice so requires. *Federal Rules of Civil Procedure Rule 15.*

*Case Law*

72.	In the case of *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, the Fifth Circuit reiterated that leave to amend a pleading should be freely given when justice so requires and should be granted absent some justification for refusal *U.S. ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375 (2003).

73.	Similarly, in *Daly v. Sprague*, the court noted that while leave to amend pleadings should be freely given when justice so requires, it is by no means automatic. *Daly v. Sprague*, 742 F.2d 896 (1984).

### F.  LANHAM ACT DOES NOT APPLY TO PLAINTIFFS' SECOND AMENDED COMPLAINT

74.	Claims for negligent misrepresentation and defamation are not covered by the Lanham Act. These claims are generally addressed under state common law or other specific statutes. *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511 (2003).

75.	Unfair Competition Not Involving Trademark Infringement: While the Lanham Act covers certain aspects of unfair competition, it does not encompass all forms of unfair competition. *Spectrum Creations, L.P. v. Carolyn Kinder Intern., LLC,* 514 F.Supp.2d 934 (2007).

76.	Claims Outside the Scope of Trademark Law: The Lanham Act does not cover claims that do not involve false representation of goods and services in commerce, such as those related to the invention or discovery of ideas. *Keane v. Fox Television Stations, Inc.*, 297 F.Supp.2d 921 (2004).

### G. Claims for Tortious Interference and Defamation in an Amended Complaint Attached to a Motion for Leave to Amend are Not Subject to Dismissal under the Copyright Act.

77. The preemption analysis under the Copyright Act involves determining whether the state law claims are equivalent to the exclusive rights protected by the Act. If the state law claims involve elements that are qualitatively different from those required for a copyright infringement claim, they are not preempted.

*Tortious Interference Claims*

78. Tortious interference claims can be preempted by the Copyright Act if they are based on the unauthorized use of a copyrighted work. For instance, in *M-I LLC v. Stelly,* the court noted that many courts find tortious interference claims to be preempted where the defendant has allegedly destroyed the exclusive right of a plaintiff to exercise and enjoy the benefits of a copyrighted work. *M-I LLC v. Stelly*, 733 F.Supp.2d 759 (2010).

79. Similarly, in *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, the court held that a state law claim is preempted if it involves elements that would not establish qualitatively different conduct by defendants than elements for action under the Copyright Act. *Ultraflo Corp. v. Pelican Tank Parts, Inc., 823 F.Supp.2d 578 (2011).*

80. However, tortious interference claims that involve additional elements beyond those required for copyright infringement may not be preempted. For example, in *Kane v. Nace Intern.*, the court held that state law rights that can arise in connection with instances of copyright infringement, such as unfair competition claims based upon breaches of fiduciary duties and trade secrets, are not preempted by the Copyright Act. *Kane v. Nace Intern.*, 117 F.Supp.2d 592 (2000).

81. Additionally, in *Mometrix Media, LLC v. LCR Publishing, LLC*, the court applied a two-part test to determine preemption: first, whether the claim falls within the subject matter of copyright, and second, whether it protects rights equivalent to any of the exclusive rights of a copyright. *Mometrix Media, LLC v. LCR Publishing, LLC*, Not Reported in S.W. Rptr. (2018).

82. In the instant case, Plaintiffs' work was created three years before the copyright by Defendants of the same work product.

*Defamation Claims*

83. Defamation claims are not preempted by the Copyright Act because they involve elements that are qualitatively different from those required for a copyright infringement claim. Defamation involves false statements that harm a person's reputation, which is distinct from the rights protected by copyright law.

84. In *Cooper v. Harvey*, the court addressed a claim for tortious interference with business relations, which included allegations of false statements made by the defendant's attorney. *Cooper v. Harvey*, 108 F.Supp.3d 463 (2015). This suggests that defamation claims would not be preempted by the Copyright Act.

*Amended Complaints and Preemption*

85. The fact that an amended complaint does not have to exactly mimic the proposed amended complaint attached as an exhibit does not affect the preemption analysis.

86. The key issue is whether the state law claims in the amended complaint are equivalent to the exclusive rights protected by the Copyright Act. If the claims involve additional elements that make them qualitatively different from a copyright infringement claim, they are not preempted.

87. In summary, claims for tortious interference and defamation in an amended complaint are not automatically subject to dismissal under the Copyright Act.

### H.  THE COURT HAS RIGHTLY GRANTED PLAINTIFFS LEAVE TO AMEND

88.   Leave to amend a pleading should be freely granted when justice so requires, meaning the court should typically allow amendments unless there's a strong reason to deny them. This is generally favored to allow parties to present the merits of their case.  **Fed. R. Civ. P. 15(a)**

89. This rule encourages courts to be liberal in granting leave to amend.

90. The court's discretion is guided by the principle of justice, meaning they should consider whether allowing the amendment will best serve the interests of the parties and the court.

### I. The Amended Complaint Attached in a Motion for Leave to Amend Does not Have to Exactly Mimic the Proposed Amended Complaint Attached as an Exhibit.

91. The Federal Rules of Civil Procedure, specifically Rule 15, provide that a party may amend its pleading with the court's leave, which should be freely given when justice requires (Federal Rules of Civil Procedure Rule 15). The failure to attach a copy of the proposed amended complaint is not, on its own, fatal to a motion for leave to amend. *Peña v. City of Rio Grande City*, 879 F.3d 613 (2018), *Sharifan v. NeoGenis Labs, Inc.*, 622 F.Supp.3d 478 (2022).

92. In *Peña v. City of Rio Grande City*, the Fifth Circuit held that the failure to attach a copy of the proposed amended complaint is not, on its own, fatal to a motion for leave to amend. *Peña v. City of Rio Grande City*, 879 F.3d 613 (2018).

93. The court emphasized that the particularity requirement is satisfied if the movant provides sufficient detail about the nature of the proposed amendment, even if the exact amended complaint is not attached. *Peña v. City of Rio Grande City*, 879 F.3d 613 (2018).

94. Similarly, in *Zaidi v. Ehrlich*, the Fifth Circuit ruled that while the plaintiff should have attached a copy of her proposed complaint to her motion, her failure to do so did not defeat her right to amend because she made clear the substance of her proposed amendment. *Zaidi v. Ehrlich*, 732 F.2d 1218 (1984).

### H. DEFENDANTS HAVE MAINTAINED SUFFICIENT MINIMUM CONTACT WITHIN THE FORUM STATE IN THE LAST FIVE YEARS.

95. Defendant has performed live shows in the forum, signed contracts in the state, and gave interviews or conducted promotional events in the forum related to the disputed matter.

96. The song made the basis of this suit "Enough" by Cardi B (originally created by the Plaintiffs under the song name "Greasy Frybread") is currently being used by World Wrestling Entertainment (WWE) commercials for its upcoming premium live event "WWE Summerslam" scheduled August 2-3, 2025, for national broadcast on the Peacock Network. WWE self-proclaims to anticipate to bring in records revenues, purportedly making approximately $75 million in revenue per event in which each event is launched with the song made the basis of this suit with events scheduled in the forum at Bert Ogden Arena on Edinburg, Texas

on July 20, 2025; July 19, 2025 at the American Bank Center in corpus Christi, Texas; July 18, 2025, at the AT&T Center in San Antonio, Texas; July 21, 2025, at the Toyota Center in Houston, Texas; and July 22, 2025 at the 713 Music Hall in Houston, Texas.[22]

97. The official events and promotional material commercials use Defendant Almanzar aka Cardi B and her stolen song "Enough" (based off Plaintiffs song Greasy Frybread) continuously to promote the premium live event, giving both jurisdiction to the court and further damages to Plaintiffs.

98. Cardi B has not had a top 10 solo song since 2021 other than "Enough" (2024). The song is used repeatedly in the commercial for WWE Summerslam. The commercial airs nationally and locally every Friday night on the USA network.

99. Moreover, the release of the Defendants' upcoming album which features the song made this basis of this suit is only delayed and is set to be released this year.[23] The only confirmed official song for said album is the song made the basis of this suit.

100. Defendants continue to avail themselves to the jurisdiction of this court and Plaintiff's claims are clearly stated and supported by statutory and 5th Circuit case law.

### III.   CONCLUSION

101. Because plaintiffs' second amended complaint and supporting affidavits establish prima facie the Court's jurisdiction and defendant's factual allegations disputing jurisdiction are untrue, the Court should retain plaintiffs' suit on the Court's docket and all motions to dismiss again be denied.

### IV.   PRAYER

102. For these reasons, plaintiffs ask the Court to deny defendants' motion to strike and renewed motion to dismiss for lack of jurisdiction and retain plaintiffs' suit on the Court's docket.

Dated: June 16, 2025.

---

[22] https://www.bing.com/search?q=wwe+summerslam+2025&qs=SS&pq=wwe+summerslam&sc=12-14&cvid=E65126B8C2154411B211B36ED4C3222F&FORM=QBRE&sp=1&ghc=1&lq=0

[23] https://rollingout.com/2025/05/02/cardi-b-reveals-why-album-2-is-delayed/

Respectfully submitted,

*Robert R. Flores*
_____
Robert R. Flores
Texas Bar No. 24071887
USSDTX: 2331246
Email: robert@rrfloreslaw.com
612 W. Nolana Suite 310
McAllen, TX 78504
Tel. (956) 329-1099
ATTORNEY FOR
PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed on this date the foregoing Plaintiffs' Response to Defendants' Motion to Strike and Renewed Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated: June 16, 2025

Signed,

_____
Robert R. Flores