IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| JOSHUA FRAUSTRO and MIGUEL AGUILAR a/k/a KEMIKAL1956,<br><br>    Plaintiffs,<br><br>    v.<br><br>BELCALIS ALMANZAR a/k/a CARDI B, ATLANTIC RECORDING CORPORATION, and WARNER MUSIC GROUP CORP.,<br><br>    Defendants. | Civil Action File No.<br><br>7:24-CV-00264 |

**DEFENDANTS' SECOND RENEWED MOTION TO DISMISS**

Defendant Belcalis Almanzar p/k/a Cardi B ("Almanzar") and Defendants Atlantic Recording Corporation and Warner Music Group Corp. (together, the "Corporate Defendants," and collectively with Almanzar, "Defendants") respectfully submit this Second Renewed Motion to Dismiss this action filed by Plaintiffs Joshua Fraustro and Miguel Aguilar (collectively, "Plaintiffs") pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction and 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

### I.    INTRODUCTION

Plaintiffs filed this action on July 3, 2024, and in response, Defendants filed a straightforward motion to dismiss on the grounds that Plaintiffs had failed to plead adequately this Court's jurisdiction or the bare elements of even a single colorable claim. Since then, Plaintiffs have revised their complaint *three times*. After each attempt to salvage their claims, Defendants identified fundamental deficiencies, and each time, Plaintiffs failed to fix them.

---

[1] Plaintiffs voluntarily dismissed the other three defendants originally named in the action. (ECF Nos. 40-41, 43.)

Despite Plaintiffs' shapeshifting allegations and revolving door of claims—and multiple rounds of briefing from Defendants explaining in detail why they were all patently insufficient—Plaintiffs' current complaint remains as deficient as their first. For the reasons set forth below, this action should be dismissed in its entirety and without any further leave to amend.

## II.  BACKGROUND

Plaintiffs allege that they are music producers who reside in Hidalgo County, Texas. (ECF No. 57 ("Second Amended Complaint" or "Second Am. Compl.") at 1.) They purportedly wrote a musical composition titled "Greasy Frybread" in 2021, which was then performed by a music artist named Sten Joddi. (*Id.* at 4-5.)

Defendant Almanzar is a music artist professionally known as "Cardi B." (*Id.* at 5.) Plaintiffs contend that Almanzar's recent song "Enough (Miami)" infringes their rights in "Greasy Frybread." (*Id.*) More specifically, Plaintiffs claim that the "melody and bassline (absent the lyrics)" are the same. (Supporting Aff. of Pl. Joshua Fraustro ¶ 2, ECF 57-2.) Plaintiffs allege that the Corporate Defendants are liable for participating in the production and distribution of Almanzar's allegedly infringing song. (Second Am. Compl. at 7.)

Plaintiffs filed this action on July 3, 2024. (ECF No. 1 (the "Original Complaint").) The Original Complaint asserted the following claims: (1) federal copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.*; (2) vicarious copyright infringement against the Corporate Defendants; (3) contributory copyright infringement against the Corporate Defendants; (4) federal unfair competition under the Lanham Act; and (5) misappropriation under Texas state law. (*Id.* at 3-5.) Plaintiffs filed a First Amended Complaint on August 2, 2024, replacing the claim for federal copyright infringement under the U.S. Copyright Act with a

2

claim for common law copyright infringement and adding Texas state law claims for conversion and quantum meruit. (ECF No. 15 ("First Amended Complaint") at 3-6.)

Almanzar and the Corporate Defendants filed motions to dismiss the First Amended Complaint on September 30, 2024 (ECF Nos. 22) and March 13, 2025 (ECF No. 54), respectively. Three months after Almanzar's motion was fully briefed, on February 26, 2025, Plaintiffs moved for leave to file another amended complaint. (ECF No. 47.) The proposed complaint that was attached to Plaintiffs' motion (the "Proposed Second Amended Complaint") did not seek to amend the claims for relief that were asserted in the First Amended Complaint but rather only sought "to exclude the dismissed parties from the complaint; to only include information relevant to the remaining named parties; and to amend the formatting of the complaint to be consistent with the complaint for civil case formatting required in the United States Southern District of Texas; and request trial by jury." (*Id.* at 2.)

At the hearing on March 13, 2025, this Court granted Plaintiffs leave to file the Proposed Second Amended Complaint and denied Defendants' then-pending motions to dismiss without prejudice to refiling a renewed motion to dismiss to address the Proposed Second Amended Complaint by April 3, 2025. Defendants filed their renewed motion on that date in accordance with this Court's Order. (ECF No. 55 (the "Renewed Motion to Dismiss").)

Ten days later, Plaintiffs filed their current Second Amended Complaint, which is different than the Proposed Second Amended Complaint. Among other material deviations, their new pleading changes the causes of action once again by dropping the claims for conversion, quantum meruit, and common law copyright infringement, removing the reference to the Lanham Act under the unfair competition claim and thereby suggesting that they are now relying on state law rather than federal law (which they later confirmed in their response to Defendants'

3

Renewed Motion to Dismiss, ECF No. 59 at 9-10), and adding claims for tortious interference and defamation. (Second Am. Compl. at 6-8.)

Plaintiffs did not seek or obtain consent from Defendants or leave from this Court to file the Second Amended Complaint. Nevertheless, at the June 17, 2025 motion hearing, this Court accepted Plaintiffs' pleading and denied the fully briefed Renewed Motion to Dismiss with leave to file this Second Renewed Motion to Dismiss on or before July 8, 2025.

### III.    ARGUMENT

**A.    This Action Should Be Dismissed for Lack of Personal Jurisdiction.**

Plaintiffs bear the burden of proving a *prima facie* case for personal jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994). Specifically, under the Due Process Clause of the Fourteenth Amendment, Plaintiffs must show (1) that Defendants have purposefully availed themselves of the benefits and protections of this forum by establishing "minimum contacts" with Texas and (2) that this Court's exercise of jurisdiction would not offend "traditional notions of fair play and substantial justice."[2] *Id.* at 647 (internal quotation marks and citations omitted).

The "minimum contacts" necessary to establish personal jurisdiction depends on whether the jurisdiction is "specific" or "general." *Id.* Specific personal jurisdiction exists where there are sufficient contacts that arise from, or are directly related to, the causes of action. *Goodyear Dunlop Tires Operations v. Brown*, 564 U.S. 915, 923-24 (2011); *accord Wilson*, 20 F.3d at 647. General jurisdiction exists independent of the asserted causes of action but is only appropriate where the defendant's contacts are so continuous and systematic to render the defendant "at home" in the forum. *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing

---

[2] Personal jurisdiction must also comport with the state's long-arm statute, but it is not necessary to consider separately the Texas long-arm statute because it extends to the limits of federal due process. *Wilson*, 20 F. 3d at 647.

4

*Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014)); *accord Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 337 (5th Cir. 2020) ("The Supreme Court (twice) discussed general jurisdiction and stated that, in order to properly exercise general jurisdiction, a defendant-company must be 'at home' in the forum state.") (citing *Goodyear* and *Daimler*).

Plaintiffs fail to allege any facts whatsoever that support general or specific personal jurisdiction in this action.

### 1. Plaintiffs Fail to Make a *Prima Facie* Showing of General Jurisdiction.

For an individual defendant, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear*, 564 U.S. at 924. A company's defacto "home" is the state where it is incorporated or where it has its principal place of business. *Daimler*, 571 U.S. at 137; *accord Frank*, 947 F.3d at 337. This Circuit recognizes that it is "incredibly difficult" to establish general jurisdiction against a defendant outside these forums. *Monkton*, 768 F.3d at 432 (citing *Daimler*, 571 U.S. at 137); *accord Pace v. Cirrus Design Corp.*, 93 F.4th 879, 898 (5th Cir. 2024) (recognizing that outside a corporate defendant's place of incorporation or principal place of business, general jurisdiction can only exist in "exceptional circumstances" that are "incredibly difficult to establish") (quotation marks and citations omitted).

Almanzar does not reside in Texas (Second Am. Compl. at 1 (alleging that Almanzar resides in Georgia)); Disclosure Statement by Belcalis Almanzar, ECF No. 24 (certifying that Almanzar resides in New Jersey)), and the Corporate Defendants are both Delaware corporations with a principal place of business in New York (Second Am. Compl. at 2; Disclosure Statement by Atlantic Recording Corporation, ECF No. 50; Disclosure Statement by Warner Music Group Corp., ECF No. 51). As a result, none of Defendants can be deemed at "home" in this forum outside "exceptional circumstances." *Pace*, 93 F.4th at 898.

Plaintiffs argue that a "court has general jurisdiction over an out of state musical artist who routinely performs in the forum state." (Second Am. Compl. at 2.) Here, Plaintiffs alleged in their prior response briefs (but not in any iteration of their complaints) that Almanzar performed at nine different music events in Texas between December 15, 2017 and October 8, 2019. (ECF No. 30 at 3; ECF No. 59 at 3-4.) However, these alleged sporadic contacts by Almanzar with Texas occurred most recently more than *five years* ago—before Plaintiffs' song was even allegedly written—and thus are hardly "continuous and systematic" enough to justify the exercise of general jurisdiction. *Monkton*, 768 F.3d at 432.

Plaintiffs also allege unidentified "contractual relationships" and "activities" within this forum. (Second Am. Compl. at 3.) These bald assertions should be disregarded entirely. *See Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) ("[T]he district court correctly held that the prima-facie-case requirement does not require the court to credit conclusory allegations, even if uncontroverted."). And in any event, they are altogether insufficient. *See Frank v. PNK (Lake Charles) LLC*, 947 F.3d 331, 341 (5th Cir. 2020) (finding lack of general jurisdiction and noting that a defendant "is not 'at home' in Texas merely because it solicits business from Texans"); *cf. Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them.").

Suffice it to say, Plaintiffs have not met their "incredibly difficult" burden to prove that general jurisdiction exists in this case. *See Monkton*, 768 F.3d at 432.

    **2.**    **Plaintiffs Fail to Make a *Prima Facie* Showing of Specific Jurisdiction.**

Turning to specific jurisdiction, even generously construing the allegations in the Second Amended Complaint, Plaintiffs might claim they have made a showing of specific jurisdiction

6

by alleging that they have been affected by the alleged infringement in Texas. But that is not enough. As the Supreme Court has explained:

> [M]ere injury to a forum resident is not a sufficient connection to the forum. Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. ***The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.***

*Walden v. Fiore*, 571 U.S. 277, 290 (2014) (emphasis added); *see also Pace*, 93 F.4th at 901-02 (finding mere effects of injury in the forum were insufficient to support jurisdiction); *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 24 F.4th 491, 497 (5th Cir. 2022) (finding lack of personal jurisdiction because while "allegedly tortious conduct may have *affected* [the plaintiff] in Texas, none of this conduct *occurred* in Texas.") (emphasis in original; citations omitted).

Plaintiffs pled in the current version of their complaint that Almanzar's song "was distributed into the stream of commerce of the Texas market by Defendants Atlantic Recording Group [sic] and Warner Brothers Music Group Corp. [sic]" (Second Am. Compl. at 5.) But that too is insufficient to confer personal jurisdiction without any evidence that this forum was purposefully targeted. *See Fernandez v. Jagger*, No. 23-30909, 2024 WL 3717264, at *3 (5th Cir. Aug. 8, 2024) (holding that "simply marketing an allegedly copyright-infringing song to the 'broadest possible geographical basis'" was insufficient to confer personal jurisdiction); *see also Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) (holding that the "universal accessibility" of a defamatory website was insufficient for jurisdiction in Texas even though "Texans visited the site, clicking ads and buying things there").

For example, in *Nunes v. NBCUniversal Media, LLC*, 582 F. Supp. 3d 387 (E.D. Tex. 2022), which Plaintiffs cited in their previous response briefs, the plaintiff sought to pursue a defamation claim against a New York-based television network in Texas. The alleged

7

defamatory statements were broadcast nationwide on cable television and on the network's social media accounts. *Id.* at 393-94. However, even though the statements were viewed by Texas residents, specific jurisdiction was lacking because there was "no evidence that the [statements were] directed at Texas viewers as distinguished from viewers in other states." *Id.* at 399 (citing *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002)) (cleaned up). Here too, there is no allegation that the commercial exploitation of Almanzar's song "Enough (Miami)" has been directed at Texas in any way that distinguishes Texas from every other state.

The other case cited by Plaintiffs in their prior response briefs, *Pension Advisory Group, Ltd. v. Country Life Insurance Co.*, 771 F. Supp. 2d 680 (S.D. Tex. 2011), is entirely inapposite. There, the parties pursued a business relationship over multiple years, which ultimately resulted in a dispute when their negotiations broke down. *Id.* at 689-92. The court found specific jurisdiction over an individual defendant who participated in thousands of phone calls and emails with the plaintiffs in Texas during the negotiations and who was a signatory on each of the three agreements at issue in the action. *Id.* at 693. Specific jurisdiction was proper because the defendant "was involved in much (if not all) of the tortious activity at issue in this case, including theft of trade secrets and interference with prospective contracts," and the causes of action arose directly out of his countless interactions with Texas spanning multiple years.

The facts in *Pension Advisory Group* bear no similarity whatsoever to the facts here. Plaintiffs do not allege that "Enough (Miami)" was written or recorded in Texas. They do not allege that any Defendants had any interaction with Plaintiffs in Texas (or anywhere else) concerning the song. They do not allege any exploitation of the song in Texas that is different from any other state. The only factual allegations they have made (in their prior briefing but not in any of their complaints) concern some sporadic concert performances by Almanzar that

8

allegedly occurred *multiple years before Plaintiffs' musical composition was even written*. Simply put, the Second Amended Complaint fails to show that Defendants targeted Texas or otherwise purposefully availed themselves of this forum in any way related to Plaintiffs' claims.

Despite filing *four* different complaints and multiple briefs in response to Defendants' previous motions to dismiss—including two improperly filed sur-replies (*see* ECF Nos. 36 and 65)—Plaintiffs still have yet to cite any facts or any legal decision that remotely supports a finding of personal jurisdiction here. Accordingly, this action should be dismissed because Plaintiffs fail to satisfy their *prima facie* burden.[3]

**B.    Plaintiffs' Claims Are Utterly Meritless.**

Even if this Court finds that it possesses personal jurisdiction over any of Defendants, it should nonetheless dismiss this action in its entirety for failure to state a claim.

**1.    Plaintiffs Fail to Plead a Valid Claim for Vicarious or Contributory Copyright Infringement.**

At bottom, this is a copyright infringement action. Plaintiffs allege that Almanzar's song "Enough (Miami)" infringes their alleged rights in a musical composition titled "Greasy Frybread."[4] More specifically, Plaintiffs claim that the "melody and bassline (absent the lyrics)" are the same. (Supporting Aff. of Pl. Joshua Fraustro ¶ 2, ECF 57-2.) Plaintiffs initially replaced their claim for federal copyright infringement with a common law claim in their First Amended Complaint after belatedly realizing (after Defendants' counsel brought it to their attention) that Plaintiffs did not have a copyright registration. It is black-letter law that a copyright registration

---

[3] Because Plaintiffs fail to meet their burden, it is unnecessary for this Court to reach the "traditional notions of fair play and substantial justice" prong of the analysis.

[4] A separate copyright exists in a sound recording (i.e., the fixation of a particular performance of a musical composition). 17 U.S.C. § 102. Plaintiffs only allege infringement of the musical composition.

is required to file a federal claim under the U.S. Copyright Act pursuant to 17 U.S.C. § 411(a). *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 892 (2019).

Importantly, however, Plaintiffs cannot circumvent the need for a copyright registration merely by framing their claim under common law. That is because the Copyright Act preempts any common law claim that is equivalent to a federal copyright claim. 17 U.S.C. § 301(a). As this Circuit noted, "[w]ith a few exceptions, all causes of action falling within the scope of the Copyright Act are expressly preempted." *Alcatel USA, Inc. v. DGI Techs., Inc.*, 166 F.3d 772, 785 (5th Cir. 1999). Accordingly, as Defendants previously noted in their Renewed Motion to Dismiss, Plaintiffs' concocted claim for common law copyright infringement in the First Amended Complaint also failed to state a claim. (ECF No. 55 at 8-9.) Plaintiffs apparently now recognize this (once again, only after Defendants brought it to their attention) because they have since also dropped their common law copyright claim in their Second Amended Complaint.

Nevertheless, their claims for "vicarious infringement" and "contributory infringement" (Claims D and E) against the Corporate Defendants remain. And while the Second Amended Complaint states explicitly that "Plaintiffs seek to protect property and property rights and bring claims *outside the scope of the Copyright Act*" (Second Am. Compl. at 6 (emphasis added)), Plaintiffs cite cases that set forth the elements of claims *that only exist* under the Copyright Act (*id.* at 7 (citing *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996) and *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971), which both involved secondary liability claims brought pursuant to the Copyright Act)). The lack of a copyright registration therefore dooms these claims too because, as noted above, a registration is

required before bringing any "civil action for infringement of the copyright in any United States work."[5] *See* 17 U.S.C. § 411(a); *see also Fourth Est. Pub. Benefit Corp.*, 139 S. Ct. at 892.

### 2. Plaintiffs' Other Attempts to Repackage Their Copyright Claims Also Fail.

As for Plaintiffs' remaining claims for tortious interference (Claim A), defamation (Claim B), unfair competition (Claim C), and "misappropriation of intellectual property" (Claim F) (collectively, the "State Law Claims"), the Second Amended Complaint once again alleges nothing more than unauthorized copying of Plaintiffs' musical composition. Thus, these claims fall squarely within the scope of the Copyright Act and are plainly preempted. *See, e.g.*, *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 655-59 (5th Cir. 2017) (unfair competition claim under Texas law preempted); *Daboub v. Gibbons*, 42 F.3d 285, 289 (5th Cir. 1995) (Texas state law claims for conversion, misappropriation, and defamation, among others, were preempted by the Copyright Act because the core of each claim was the alleged wrongful copying, distribution, and performance of the plaintiff's song); *Keane v. Fox Television Stations, Inc.*, 29 F. Supp. 2d 921, 945 (S.D. Tex. 2004) ("[A]ssuming that the state law doctrines of unfair competition, misappropriation, implied contract, and/or quantum meruit would prevent the defendants from copying [plaintiff's] idea, the operation of those doctrines in the context presented here would be preempted.").

As the Fifth Circuit explained in *Daboub*, which could not be any more applicable here,

> In effect, the [plaintiffs] have attempted to avoid the Copyright Act by presenting as many state law causes of action to the court as possible. [Their] argument is like a ventriloquist's attempt to present a copyright action in the voice of state law claims. However, if the language of the act could be so easily circumvented, the preemption provision would be useless, and the policies behind a uniform Copyright statute would be silenced.

---

[5] Although this Court cannot entertain the merits of Plaintiffs' copyright claims given these legal infirmities, it warrants noting that there also is no factual basis for liability against Defendants.

42 F.3d at 290. If allowed, Plaintiffs will undoubtedly continue to find new state law claims to throw against the wall in a desperate attempt to plead a colorable claim. But so long as those claims are based on the alleged copying of their song, their claims will be equivalent to a copyright claim and therefore preempted.

Plaintiffs' State Law Claims also suffer from other fatal infirmities. Under Texas law, a tortious interference claim requires Plaintiffs to demonstrate that Defendants interfered with a specific, existing agreement between Plaintiffs and a third party. *Funes v. Villatoro*, 352 S.W.3d 200, 213 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). But Plaintiffs' Second Amended Complaint fails to allege the existence of any such agreement or facts sufficient to set forth any of the other elements either. That is, Plaintiffs have not alleged Defendants' knowledge of the non-existent contract, an intent to interfere with it, actual interference, or proximate causation of Plaintiffs' alleged damages. *See Cmty. Health Sys. Prof'l Servs. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (listing elements).

Plaintiffs' "defamation" claim also fails on its face. The entire basis of this claim is that "Defendants published Plaintiffs' work "[G]reasy Frybread" under the pseudonym "Enough(Miami)" and thus that "[i]t was a false statement to say that Defendant created 'Enough(Miami).'" (Second Am. Compl. at 6.) In other words, Plaintiffs suggest that Defendants have simply taken their song "Greasy Frybread" and marketed it as "Enough (Miami)" under Almanzar's name. Even if this were true (it is not), this statement cannot support a defamation claim because it makes no reference to the Plaintiffs, either expressly or implicitly. *See Cox Tex. Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 433 (Tex. App.—Austin 2007, pet. denied) (noting the allegedly defamatory "publication must refer to some ascertained or ascertainable person and that person must be the plaintiff") (quotation marks and citation omitted).

Putting that aside, Plaintiffs' contention is also squarely contradicted by their own pleadings. The supporting affidavit submitted by Plaintiff Joshua Fraustro admits that the lyrics of the two songs are different. (ECF 57-2 ¶ 2.) And this Court can confirm for itself that the two songs are not the same because they are incorporated by reference into the Second Amended Complaint (at 5 n.6 & n.8). *See In re Securities Litigation BMC Software, Inc.*, 183 F. Supp.2d 860, 882 (S.D. Tex. 2001) (noting that courts may "consider documents integral to and explicitly relied on in the complaint" and those "that are partially quoted or referred to in the complaint") (quotation marks and citations omitted). Plaintiffs also do not properly allege the other elements of defamation claim. *See In re Lipsky*, 460 S.W.3d 579, 594 (Tex. 2015) (listing elements). In short, this claim is completely baseless.

Likewise, regarding Plaintiffs' "unfair competition" claim, they have not alleged all of the elements of the claim. *See Alcatel USA, Inc.*, 166 F.3d at 788 (citing elements of state law claim and finding claim preempted by the Copyright Act). And with respect the elements they have pled, their allegations are merely conclusory and wholly insufficient to overcome this motion to dismiss. *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.").

Finally, in support of their "misappropriation of intellectual property" claim, the Second Amended Complaint cites the Supreme Court's decision in *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974). The Court there held that an Ohio trade secret law was not preempted by federal patent law because it sought to protect something fundamentally different, i.e., trade secrets. Texas similarly protects trade secrets, but Plaintiffs obviously cannot allege that their publicly available song is protected under these laws, *see* Tex. Civ. Prac. & Rem. Code §

13

134A.002(6) (requiring trade secrets to be kept secret), or that they are otherwise seeking to protect something outside the scope of copyright. Accordingly, this claim must be dismissed along with each of the other State Law Claims.

### C. Plaintiffs Should Not Be Given Further Leave to Amend.

Plaintiffs have now amended their complaint *three* times with the benefit of Defendants' prior motions to dismiss, which outlined all of the same deficiencies argued above. Their repeated amendments reflect not a refinement of legal theory but instead a scattershot attempt to assert any conceivable cause of action, however unfounded. It is abundantly clear that Plaintiffs are unaware of any facts that would support personal jurisdiction or *any* viable claim. At Defendants' considerable expense, Plaintiffs have been afforded ample opportunity to plead their case. This Court's dismissal of this action should be without further leave to amend. *United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (affirming denial of third amendment and noting that "leave to amend properly may be denied when the party seeking leave has repeatedly failed to cure deficiencies by amendments previously allowed and when amendment would be futile") (citation omitted).

### IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that this action be dismissed in its entirety, including because: (1) Plaintiffs fail to satisfy their burden of establishing personal jurisdiction; and (2) each of Plaintiffs' claims fail to state a valid claim. Plaintiffs should also be denied further attempts to cure these deficiencies as any amendment would be futile.

Dated: July 8, 2025

/s/ W. Andrew Pequignot
Brett D. Solberg Texas Bar No. 24070651
S.D. Tex. Bar No. 1188910
DLA PIPER LLP (US)
845 Texas Avenue, Suite 3800

Houston, Texas 77002-5005
(713) 425-8482 (telephone)
brett.solberg@us.dlapiper.com

Taylor O. Reed Texas Bar No. 24101958
S.D. Tex. Bar No. 3895240
1900 N. Pearl St., Suite 2200
Dallas, Texas 75201
(214) 743-4500 (telephone)
taylor.reed@us.dlapiper.com

Lisa F. Moore (admitted PHV)
W. Andrew Pequignot (admitted PHV)
MOORE PEQUIGNOT LLC
887 West Marietta Street, Suite M-102
Atlanta, Georgia 30318
(404) 748-9596 (telephone)
lisa@themoorefirm.com
andrew@themoorefirm.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed on this date the foregoing DEFENDANTS' SECOND RENEWED MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing to all of the attorneys of record.

DATED:  July 8, 2025

/s/ W. Andrew Pequignot
W. Andrew Pequignot