United States District Court
Southern District of Texas

**ENTERED**

March 30, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| JOSHUA FRASUTRO and MIGUEL AGUILAR a/k/a KEMIKAL956, §§§ | |
| Plaintiffs, §§ | |
| VS. § | CIVIL ACTION NO. 7:24-CV-264 |
| §§ | |
| BELCALIS ALMANZAR a/k/a CARDI B, ATLANTIC RECORDING CORPORATION, and WARNER MUSIC GROUP, §§§§ | |
| Defendants. §§ | |

## OPINION AND ORDER

Plaintiffs Joshua Fraustro and Miguel Aguilar are music producers and allege that Belcalis Almanzar (a/k/a "Cardi B") and corporate Defendants Atlantic Recording Corporation and Warner Music Group copied, misappropriated, and profited from Plaintiffs' musical work. Plaintiffs allege various causes of action based on Texas and federal law.

Defendants seek dismissal of all claims, arguing that this Court lacks personal jurisdiction over the Defendants under Federal Rule of Civil Procedure 12(b)(2) and that Plaintiffs fail to state a claim upon which relief can be granted under Rule 12(b)(6).

Based on the record and the applicable law, the Court concludes that it lacks personal jurisdiction over all Defendants and, alternatively, that dismissal of each claim is proper under Rule 12(b)(6).

## I.      Allegations and Jurisdictional Facts[1]

Plaintiffs Joshua Fraustro and Miguel Aguilar a/k/a Kemikal 956 have produced music for over twenty years.  In March 2021, Plaintiffs collaborated and produced the musical work

---

[1] In deciding a Rule 12(b)(6) motion, a court must accept as true well-pleaded allegations within the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Greasy Frybread" for the rapper Sten Joddi.  In August 2023, the song was featured on a popular television series, and one month later, Joddi published the song in a music video on Youtube.

In March 2024, Defendant Belcalis Almanzar "unlawfully duplicated the song 'Greasy Frybread' and released it under the name 'Enough (Miami)' without the permission of Plaintiffs[.]" (Second Am. Compl., Doc. 57, 5)  Dr. Robert Tomaro,  a forensic musicologist, identifies numerous portions of "Greasy Frybread" that Almanzar utilized in "Enough (Miami)."

"Enough (Miami)" enjoyed significant global success.  As part of that success, Defendants Atlantic Recording Corporation and Warner Music Group distributed "Enough (Miami)" into "the stream of commerce of the Texas market[.]" (*Id.*)  In addition, Almanzar has "an extensive history of appearing for profit in Texas[.]"[2] (*Id.*)

## II.    Procedural History

In July 2024, Plaintiffs filed this lawsuit against Almanzar, Atlantic Recording, Warner Music Group, and other defendants, alleging claims under Texas law and federal copyright law. The following month, they filed their First Amended Complaint.

Almanzar timely moved to dismiss.  While the motion remained pending, Plaintiffs voluntarily dismissed their causes of action against all defendants, except Almanzar, Atlantic Recording, and Warner Music Group.  The two corporations then filed a Renewed Motion to Dismiss.

In February 2025, Plaintiffs sought leave to file a Second Amended Complaint, and Defendants opposed the motion.  In March, the parties appeared for a hearing, and the then-presiding judge granted Plaintiffs' request to file a Second Amended Complaint that would reflect "housekeeping, rather than substantive changes." (March 13 Hrg. Tr., Doc. 81, 3:18–19).  The

---

[2] Almanzar resides in New Jersey, while Atlantic Recording and Warner Music Group are Delaware corporations with a principal place of business in New York.

2 / 21

Court denied the pending Motion to Dismiss without prejudice to the Defendants seeking dismissal as to any causes of action alleged in Plaintiffs' Second Amended Complaint.[3]

In April, Plaintiffs filed the operative Second Amended Complaint, alleging causes of action against all three defendants for tortious interference with prospective business relationships, defamation, unfair competition, and misappropriation of intellectual property, all under Texas law. In addition, they allege claims under federal law for vicarious infringement and contributory infringement against Atlantic Recording and Warner Music Group.

Defendants moved to dismiss the claims within the Second Amended Complaint, arguing that Plaintiffs' allegations do not demonstrate that personal jurisdiction exists over any Defendant, and that in any event, Plaintiffs do not allege claims upon which relief can be granted. The parties have fully briefed the issues that the Motion to Dismiss raises.

In August, Plaintiffs filed a Motion for Preliminary Injunction, based on the allegation that Almanzar intended to include "Enough (Miami)" in an upcoming album release. On October 2, the case was re-assigned to the undersigned. At a hearing later that month, the Court denied the Motion for Preliminary Injunction as moot, as the parties agreed that Almanzar's new album had not included "Enough (Miami)."

At the hearing, Plaintiffs' counsel expressed a desire to amend the Second Amended Complaint, and the Court directed him to file an appropriate motion for such relief and for the Court's consideration. That same month, Plaintiffs filed a Motion for Leave to File Third Amended Complaint (Doc. 79), attaching their proposed amended pleading. In the proposed Third Amended Complaint, Plaintiffs retain their causes of action based on Texas law, but withdraw their claims for vicarious infringement and contributory infringement. They also add

---

[3] Plaintiffs contend that the then-presiding judge denied Defendants' Motion to Dismiss on the merits. Having reviewed the relevant hearing transcripts, the Court rejects this characterization of the hearing and finds that the then-presiding judge unambiguously denied the then-pending Motion to Dismiss without prejudice, in conjunction with granting leave to Plaintiffs to amend their pleading.

new causes of action for common-law plagiarism, unjust enrichment, and interpolation and misappropriation of musical work.  Defendants oppose the request for leave to amend.

In December, Plaintiffs again sought a preliminary injunction, citing Almanzar's upcoming performance schedule in Texas and alleging that she would perform "Enough (Miami)" during those concerts.  They also seek an expedited discovery schedule.  In their motion for injunctive relief, Plaintiffs represent that they have secured a copyright for "Greasy Frybread," with an effective registration date of October 31, 2025.  *See* Copyright Registration for Greasy Frybread (Instrumental), Copyright Registration No. PAu 4-279-149 (U.S. Copyright Office 2025).

## III.    Applicable Standard of Review

Defendants move for dismissal based on the alleged absence of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim upon which relief can be granted.

"Where a defendant challenges personal jurisdiction, the party seeking to invoke the power of the court bears the burden of proving that jurisdiction exists." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).  The burden is not a demanding one; the plaintiff need only make a prima facie case that the court has personal jurisdiction over the defendant. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 219 (5th Cir. 2012).  When faced with a motion to dismiss for lack of personal jurisdiction, a district court "may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997).  As part of this determination, a court "must accept as true the plaintiff's uncontroverted allegations, and resolve in its favor all conflicts between the jurisdictional facts contained in the parties' affidavits and other documentation." *Freudensprung v. Offshore Tech. Services, Inc.*, 379 F.3d 327, 343 (5th Cir. 2004) (cleaned up).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiffs grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007)). The facts alleged, taken as true, must state a claim that is plausible on its face. *Amacker v. Renaissance Asset Mgmt. LLC*, 657 F.3d 252, 254 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

## IV.    Analysis

### A.  Personal Jurisdiction

"A federal district court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of such jurisdiction by the forum state is consistent with due process under the United States Constitution." *Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 177 (5th Cir. 2013). In this case, the two tests are co-extensive because Texas's long-arm statute "extends to the limits of the United States Constitution[.]" *Ethridge v. Samsung SDI Co., Ltd.*, 137 F.4th 309, 313 (5th Cir. 2025) (quoting *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016)).

The Due Process Clause permits two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017).

### 1.  General Jurisdiction

Plaintiffs allege that the Court possesses general jurisdiction over Almanzar because she is "an out of state musical artist who routinely performs in the forum state." (Second Am. Compl., Doc. 57, 2) Regarding the corporate Defendants, Plaintiffs assert that these entities "meet the requisite minimum contacts with Texas by purposefully avail [sic] itself of the privilege of

5 / 21

conducting activities within the Texas market, thus invoking the benefits and protections of its laws." (*Id.* at 3)  In response, Defendants note that Almanzar does not reside in Texas, and the corporate Defendants are citizens of Delaware and New York.  They contend that a court cannot exercise general jurisdiction over defendants who are not residents of the forum state and have taken no action to render themselves at home in the forum state.

For corporate defendants, general jurisdiction attaches where the company is incorporated or has its principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  "It is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014).  To establish such jurisdiction, the plaintiff must demonstrate that the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336–37 (5th Cir. 2020) (quoting *Goodyear Dunlop Tires Operations, S.A.*, 564 U.S. at 919) (explaining that the defendant's "continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities").  The activities must also be distinct from those that would render the defendant at home in any other state, because "a defendant can scarcely be deemed at home in all [states]." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 20 (2014).  Thus, the continuous distribution of goods to numerous states would not automatically render a company subject to general jurisdiction in each of those states. *Id.* at 132.

Here, Plaintiffs submit insufficient jurisdictional evidence to establish general jurisdiction over Almanzar, Atlantic Recording, or Warner Music Group.[4]  As to Almanzar, Plaintiffs rely solely on her performances in Texas on numerous occasions over several years.  But Plaintiffs do not

---

[4] Defendants correctly note that Plaintiffs appear to rely solely on specific jurisdiction in their response to the motion to dismiss.  But the argument that Plaintiffs present focuses on alleged facts that typically concern general jurisdiction, such as Almanzar performing in Texas (and unrelated to "Enough (Miami)"), and the Warner Music Group's prior lawsuits in Texas.  Out of an abundance of caution, the Court deems Plaintiffs as asserting both general and specific jurisdiction.

demonstrate that Almanzar targeted Texas for concert performances, rather than simply including Texas venues within a broader concert tour in numerous states.  Almanzar's performances in Texas are not distinct from her performances in those other states, rendering the concerts in Texas insufficient to establish general jurisdiction.  With respect to the corporate defendants, Plaintiffs rely on these Defendants' commercial activity in Texas, such as the publication of musical works on streaming services nationwide.  Again, Plaintiffs fail to show that these activities differed from these Defendants' activities in other states—i.e., the fact that Defendants published musical works online so as to make them available in every state does not reveal a targeting of the Texas market.  In addition, the reliance upon two lawsuits in Texas, in 2006 and 2017, involving Warner Music Group does not suffice to render that company "at home" in Texas.  In the end, Plaintiffs do not carry their burden to present jurisdictional facts sufficient to establish general jurisdiction over any of the Defendants.

### 2.  Specific Jurisdiction

Plaintiffs argue that specific jurisdiction exists "over the Defendants because the Plaintiffs' claims arise out of or relates to the artist's contacts with the forum, and the Defendants purposefully directed activities at the forum." (Am. Resp., Doc. 69, 4)  Based on the record and the applicable law, the Court disagrees.

"To establish specific personal jurisdiction, three conditions must be met: (1) the defendant purposefully availed itself of the privilege of conducting activities in the forum State, (2) the plaintiff's claim arises out of or relates to those purposeful contacts with the forum, and (3) the exercise of personal jurisdiction must be fair and reasonable." *Ethridge*, 137 F.4th at 314; *see also Fernandez v. Jagger*, No. 23-30909, 2024 WL 3717264, at *2 (5th Cir. Aug. 8, 2024) (quoting *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021)).  A court lacks personal jurisdiction over a defendant where a defendant's "contacts with the forum [are] so minimal that it would be patently unfair, let alone inconvenient, to require him to defend an action there." *Time, Inc. v. Manning*, 366 F.2d 690, 696 (5th Cir. 1966).  The harm that a plaintiff alleges

must connect the defendant to Texas "in a meaningful way." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). And under the second prong of the analysis, the plaintiff must rest his causes of action on the purposeful contacts with the forum. *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) ("Where a defendant lacks *suit-related ties* with the forum . . . he cannot reasonably expect suit there." (emphasis added)).

The Fifth Circuit's decision in *Fernandez*, while unpublished, proves instructive. That case involved a Spanish musical artist domiciled in Spain who alleged that the Rolling Stones misappropriated elements of his musical work. He brought suit in Louisiana. The court affirmed the dismissal of the action for lack of personal jurisdiction, determining that the defendants lacked minimum contacts with Louisiana. In particular, Fernandez merely alleged that the defendants released and distributed the allegedly-infringing song online, thus available to Louisiana residents, and distributed physical records and CDs in the state. The court explained that such general contacts did not satisfy the minimum contacts required to establish specific personal jurisdiction. *Fernandez*, 2024 WL 3717264, at *1 ("Fernandez has not alleged that the defendants have targeted Louisiana in any particularized way beyond making music generally available on the internet."). Those activities in Louisiana were identical to the defendants' activities in other states–i.e., the activities revealed the defendants targeting the entire country with the allegedly-infringing work, rather than any specific state.

Here, Plaintiffs fail to plausibly allege sufficient jurisdictional facts to establish specific jurisdiction as to any Defendant. First, Plaintiffs argue that Almanzar "performed live shows in Texas; signed contracts in Texas; gave interviews in Texas; conducted promotional events in Texas; and directed advertising to Texas residents." (Am. Resp., Doc. 69, 4; *see also* Second Am. Compl., Doc 57, 2–3 (alleging that Almanzar "purposefully direct[ed] her activities" to Texas residents by "engaging in musical [performances] within Texas" and "entering [into] contractual relationships")) But Plaintiffs neither render clear the time period in which these alleged contacts occurred, nor explain how those contacts differed from Almanzar's professional relationship with

other states.  The alleged contacts resemble those at issue in *Fernandez*, which proved insufficient to establish specific jurisdiction.  In addition, even if those activities represented sufficient minimal contacts to satisfy the first prong of the specific-jurisdiction analysis, Plaintiffs do not demonstrate that their claim arises out or of is related to those contacts.  Plaintiffs allege no facts or submit any evidence of Almanzar's contacts with Texas related to her creation of "Enough (Miami)."[5]  The fact that Plaintiffs, the creators of the allegedly-infringed work "Greasy Frybread," live in Texas does not establish specific jurisdiction over Almanzar.

Second, as to the corporate Defendants, Plaintiffs contend that the companies directed advertising to Texas residents, released "Enough (Miami)" in the Texas market, and that Warner Music Group took part in lawsuits in Texas in 2006 and 2017.  With respect to the business activities, Plaintiffs do not demonstrate that the distribution of musical works in Texas differed in any way from the Defendants' distribution of the works in other states.  And the fact that Warner Music Group engaged in two lawsuits in Texas over a span of twelve years does not represent sufficient minimal contacts to support specific jurisdiction, and would in any event have no relation to Plaintiffs' current lawsuit.

Plaintiffs cite *Wilson v. Belin,* 20 F.3d 644, 646 (5th Cir. 1994), but the reasoning of that decision does not support their position.  That case involved a libel action against residents of Indiana and Iowa.  The court affirmed that specific jurisdiction in Texas did not exist as to these defendants, because they "took no planned action to inject themselves or their opinions into the Texas forum." *Id*. at 648.  In the same way, Plaintiffs do not demonstrate how either Warner Music Group or Atlantic Recording targeted Texas, as opposed to distributing "Enough (Miami)" across the country.

---

[5] In separate briefing, Plaintiffs note that Almanzar recently launched a concert series that includes performances in Texas.  Even if true, however, these post-lawsuit contacts with Texas do not bear on whether specific jurisdiction existed when Plaintiffs filed this lawsuit. *See, e.g., Asarco, Inc. v. Glenara, Ltd.*, 912 F.2d 784, 787 n.1 (5th Cir. 1990) ("[T]he relevant time for determining [personal] jurisdiction is the filing of the complaint[.]").

Whether analyzed under general or specific jurisdiction, Plaintiffs fail to demonstrate the prerequisites to establish that this Court possesses personal jurisdiction over any of the Defendants.

### B.  Rule 12(b)(6) Analysis[6]

Defendants also move to dismiss the claims within Plaintiffs' Second Amended Complaint under Rule 12(b)(6).  Against all Defendants, Plaintiffs allege four causes of action under Texas law—tortious interference with prospective business relationships, defamation, unfair competition, and misappropriation of intellectual property.  They also allege federal claims for vicarious infringement and contributory infringement against Atlantic Recording and Warner Music Group.

In their Motion to Dismiss, Defendants argue that the federal Copyright Act, 17 U.S.C. § 101 *et seq.*, preempts Plaintiffs' state-law claims, and that in any event, Plaintiffs fail to allege the required elements for some of those causes of action.  In addition, Atlantic Recording and Warner Music Group argue that the claims alleged against them under federal law require the existence of an underlying copyright, which Plaintiffs fail to allege for the relevant time period.

### 1.  Tortious Interference with Prospective Business Relations

First, Plaintiffs allege that, but for the release of "Enough (Miami)," Plaintiffs "would have entered into a business relationship" and that Defendants knew or should have known that their actions would have disrupted such a relationship. (Second Am. Compl., Doc. 57, 6)  In their Motion, Defendants contend that the Copyright Act preempts this claim, and that Plaintiffs' allegations prove insufficient to present a viable cause of action.

### a.  Preemption

"The primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty v. Fantasy*, Inc., 510

---

[6] The Court's conclusion as to personal jurisdiction renders it unnecessary to reach Defendants' Motion based on Rule 12(b)(6).  Still, to facilitate appellate review, the Court also analyzes this portion of the Motion.

U.S. 517, 524 (1994).  Section 301 of the Copyright Act concerns "preemption with respect to other laws[,]" and based on that provision's broad language, the Fifth Circuit has recognized that "[w]ith a few exceptions, all causes of action falling within the scope of the Copyright Act are expressly preempted*." Daboub v. Gibbons*, 42 F.3d 285, 288 (5th Cir. 1995).  The Copyright Act "preempts state protection of works that fall within the subject matter (that is, the scope) of copyright, regardless whether the works are actually afforded protection under the Copyright Act." *Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 845 F.3d 652, 656 (5th Cir. 2017) (citing S*pear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 596–97 (5th Cir. 2015)).

Preemption occurs when two conditions exist, both specified in Section 301.  First, the work in which the legal right is asserted must fall within the subject matter of copyright, as defined by 17 U.S.C. §§ 102 and 103. *See* 17 U.S.C. § 301(a).  Section 102 protects "original works of authorship fixed in any tangible medium of expression[,]" including "musical works" and "sound recordings[.]" 17 U.S.C. § 102(a).  Section 103 extends protection to "compilations and derivative works." 17 U.S.C. § 103(a).  A court identifies "what intellectual property [a plaintiff] is seeking to protect." *Ultraflo Corp.*, 845 F.3d at 656.

Second, the legal right that the plaintiff seeks to protect must be "equivalent to any of the exclusive rights within the general scope of copyright as specified by" 17 U.S.C. § 106.  *Alcatel USA, Inc. v. DGI Techs.*, Inc., 166 F.3d 772, 786 (5th Cir. 1999); *see also Ultraflo Corp.*, 845 F.3d at 657.  Under this condition, courts also apply the "extra element" test, which considers "whether one or more qualitatively different elements are required to constitute the state-created cause of action being asserted." *Ultraflo Corp.*, 845 F.3d at 657 (quoting *Alcatel USA, Inc.*, 166 F.3d at 786).  If the state law includes an extra element, then the Copyright Act does not preempt the protection that the state law provides. *Ultraflo Corp.*, 845 F.3d at 657.  For example, the Fifth Circuit concluded that the Copyright Act preempted claims under Texas law for "conversion, misappropriation, plagiarism, a violation of the Texas Free Enterprise and Antitrust Act of 1983, disparagement, and defamation." *Daboub*, 42 F.3d at 289.  In reaching this decision, the court

explained that the "core of each of these state law theories of recovery in this case, without detailing the specific elements comprising each claim, is the same: the wrongful copying, distribution, and performance of the lyrics of *Thunderbird*." *Id.* The plaintiff had "failed to allege or produce evidence of any element, such as an invasion of personal rights or a breach of fiduciary duty, which render their claims different in kind from copyright infringement." *Id.* (cleaned up) (quoting *P.I.T.S. Films v. Laconis*, 588 F.Supp. 1383, 1386 (E.D.Mich. 1984)).

In the present case, Plaintiffs allege that Defendants' "independently tortious or unlawful acts of releasing 'Greasy Frybread' as 'Enough (Miami)' . . . with only minor deviations from the music and replacing the lyrics," prevents Plaintiffs from entering into prospective business relationships. (Second Am. Compl., Doc. 57, 6) As their own allegations render clear, the cause of action stems from the alleged unlawful copying of Plaintiffs' musical work, a subject that falls squarely within the Copyright Act's subject matter. As a result, the Copyright Act preempts this cause of action as alleged.

Plaintiffs rely upon *Sefton v. Jew*, 201 F.Supp.2d 730 (W.D. Tex. 2001), in which the district court concluded that the Copyright Act did not preempt a claim of unfair competition. But in that case, the court explained that the plaintiff rested the claim upon the alleged ownership of "[e]-mail names, e-mail addresses and service marks[,]" which do not fall within the subject-matter of the Copyright Act. *Id.* at 746. As a result, *Sefton* does not support Plaintiffs' position.

Plaintiffs also receive no help when they cite *Edmark Industries SDN. BHD. v. South Asia Intern. (H.K.) Ltd.*, 89 F.Supp.2d 840 (E.D. Tex. 2000). That case did not concern preemption, and involved some claims based on plaintiff's valid copyright protection of business brochures. And as to that plaintiff's unfair competition claim under the Lanham Act, the court found the claim time barred and had no need to address preemption.

For these reasons, the Court concludes that the Copyright Act preempts Plaintiffs' cause of action for tortious interference.

### b. Failure to State a Claim

Plaintiffs allege that, but for Defendants' conduct, there is a "reasonable probability plaintiffs would have entered into business relationships" relating to "Greasy Frybread." (Second Am. Compl., Doc. 57, 6) Defendants Challenge this cause of action under Rule 12(b)(6) by arguing that Plaintiffs' allegations do not identify any specific business relationship.

Under Texas law, to prevail on a claim for tortious interference with a prospective business relationship, the plaintiff must show that: (1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (citing *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001)).

Plaintiffs' tortious interference claim fails to plausibly allege multiple elements. On the first element, Plaintiffs fail to allege the reasonable probability that they would have entered into any contract. Instead, they allege only the conclusory statement that absent the release of "Enough (Miami)," they would have "entered into a business relationships[.]'" (Second Am. Compl., Doc. 57, 6) The Second Amended Complaint, however, contains no factual support for this statement, such as identifying a specific business partner. As a result, Plaintiffs fail to state a claim for tortious interference.

### 2. Defamation

Plaintiffs allege that Defendants falsely claimed to create "Enough (Miami)", and the publication and distribution of "Enough (Miami)" caused Plaintiffs reputational harm within the music industry and caused them to be blacklisted. In their Motion, Defendants argue that the Copyright Act preempts this cause of action, and that in any event, Plaintiffs' allegations do not

plead all required elements because Defendants' alleged statement on which Plaintiffs base this claim "makes no reference to the Plaintiffs, either expressly or implicitly." (Motion to Dismiss, Doc. 66, 12)

### a. Preemption

The theory of recovery under defamation is premised upon "the harm inflicted upon [individuals] by defamatory falsehoods." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 341 (1974)). On its face, that theory of recovery is independent from copyright, which permits recovery for, as relevant here, conduct stemming from "wrongful copying, distribution, and performance[.]" *Daboub*, 42 F.3d at 289. But as alleged, Plaintiffs contend that Defendants engaged in defamation through the false creation of "Enough (Miami)" and the publication of that musical work. These allegations bring the alleged defamation claim within the contours of the rights protected by the Copyright Act, triggering preemption. *See, e.g.*, *id.* (finding that the Copyright Act preempted a defamation claim).

### b. Failure to State a Claim

Under Texas law, the elements of defamation are (1) the publication of a false statement of fact to a third party, (2) that was defamatory of and concerning the plaintiff, (3) with the requisite degree of fault, and (4) in some cases, damages. *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). To meet the second element, the allegedly defamatory statement must "refer to some ascertained or ascertainable person and that person must be the plaintiff." *Cox Texas Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 433 (Tex. App.—Austin 2007, pet. denied).

In advancing their claim for defamation, Plaintiffs rely on Defendants' publication of "Enough (Miami)." But they do not allege, and they do not explain in their briefing, how the publication of "Enough (Miami)" represents a reference to Plaintiffs. It does not. As a result, Plaintiffs do not allege a viable claim for defamation.

### 3. Unfair Competition

14 / 21

Plaintiffs allege only three sentences for this cause of action, claiming that they created "Greasy Frybread," that Defendants "used 'Greasy Frybread' in competition to create 'Enough (Miami),'" which "resulted in commercial harm to the plaintiff [sic]." (Second Am. Compl., Doc. 57, 7)  Defendants, in addition to arguing that the Copyright Act preempts this claim, argue that Plaintiffs' conclusory and insufficient allegations do not present a viable claim.

### a.  Preemption

The Copyright Act preempts this cause of action.  First, Plaintiffs' authorship of "Greasy Frybread" falls within the subject matter of copyright, which expressly covers "musical works" and "sound recordings."  Second, the unfair competition fails the extra-element test.  Unfair competition by misappropriation "does not afford protection materially different from federal copyright law." *Ultraflo Corp.*, 845 F.3d at 657 (reasoning that the expenditure of "time, labor, skill, and money are necessarily contemplated in the copyright") (cleaned up).  Thus, Defendants prevail as to this cause of action based on preemption.

### b.  Failure to State a Claim

Texas courts have observed that there are "multiple torts in the unfair-competition category[.]" *KBIDC Investments, LLC v. Zuru Toys Inc.*, No. 05-19-00159-CV, 2020 WL 5988014, at *5 n. 4 (Tex. App.—Dallas Oct. 9, 2020, pet. denied).  Here, in their Second Amended Complaint, Plaintiffs do not specify the nature of their claim and rely only on the previously-referenced brief allegations.  Defendants move for dismissal on the grounds that the allegations fail to allege the required elements.

The Court finds that Plaintiffs' generic allegations do not state a viable cause of action.  In their Response, Plaintiffs rely on a decision that also recognized that "unfair competition" under Texas law represents an "umbrella for all statutory and non-statutory causes of action arising out of business conduct that is contrary to honest practice in industrial or commercial matters[.]" *Sefton*, 201 F. Supp. 2d at 745.  As Plaintiffs do not include sufficient allegations to identify the specific cause of action alleged, they fail to present a viable claim.

15 / 21

#### 4. Misappropriation of Intellectual Property

Plaintiffs allege that "Defendants have taken the plaintiffs' intellectual property and used it for their own advantage, constituting misappropriation of intellectual property." (Second Am. Compl., Doc. 57, 8)  In response, Defendants argue that the Copyright Act preempts the claim as to any intellectual property beyond trade secrets, and that Defendants cannot base the claim on Texas law regarding trade secrets.

##### a. Preemption

The core of Plaintiffs' claim fits squarely within copyright protection.  Plaintiffs base the cause of action on the alleged wrongful copying and performance of their musical work, a subject within the heart of the Copyright Act.  Not surprisingly, the Fifth Circuit in *Daboub* affirmed the application of preemption over a similar claim based on Texas law. *Daboub*, 42 F.3d at 289.

Plaintiffs support their position by citing to *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974), which they allege supports a "state law tort claim for misappropriation" when one party "depriv[es] the plaintiffs of the benefits of their labor, skill, and money." (Second Am. Compl., Doc. 57, 8)  They further assert that in *U.S. Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.*, 865 S.W.2d 214 (Tex. App.—Waco 1993, writ denied), a Texas court permitted a misappropriation claim to protect sound recordings.

Neither of these decisions helps Plaintiffs on the issue of preemption.  The court in *U.S. Sporting Products* did not analyze the preemption doctrine.  And *Kewanee* at most recognizes that the Copyright Act may not preempt a claim for trade secret misappropriation under certain states' laws.

Thus, other than Plaintiffs' misappropriation claim based on an alleged trade secret, the Copyright act preempts this cause of action.

##### b. Failure to State a Claim

The elements of trade secret misappropriation are (1) that a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or was discovered by

16 / 21

improper means, (3) and the defendant used the trade secret without the plaintiff's authorization. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 197 (Tex. App.—Fort Worth 2005, no pet.). Texas law defines a trade secret as "all forms of information . . . if: (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret . . . ." TEX. CIV. PRAC. & REM. CODE § 134A.002(6). The law regarding trade secrets does not apply to intellectual property that an individual has voluntarily disclosed to the public. *See, e.g.*, *Interox America v. PPG Industries*, Inc., 736 F.2d 194, 202 (5th Cir. 1984) ("One who voluntarily discloses information or who fails to take reasonable precautions to ensure its secrecy cannot properly claim that the information constitutes a trade secret.").

Here, Defendants challenge Plaintiffs' trade secret claim on the grounds that a party "cannot allege that their publicly available song is protected[.]" (Motion, Doc. 66, 13) The Court agrees. Plaintiffs acknowledge that Stoddi "released the song 'Greasy Frybread' on the famous show 'Reservation Dogs' . . . with the permission and consent of Plaintiffs" and that the song was later released on YouTube. (Second Am. Compl., Doc. 57, 4–5) Having voluntarily disclosed "Greasy Frybread" to the public, Plaintiffs cannot seek trade secret protection for the musical work.

### 5. Vicarious Infringement and Contributory Infringement

Plaintiffs allege that Defendants Atlantic Recording and Warner Music Group supervised Almanzar's allegedly infringing activity and had a direct role in its production and distribution, resulting in vicarious liability and contributory infringement. Defendants move for dismissal based on preemption.

The theory of vicarious infringement is a judicially developed cause of action to enforce "copyrights against a defendant whose economic interests were intertwined with the direct infringer's, but who did not actually employ the direct infringer." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 262 (9th Cir. 1996). The claim represents a form of secondary copyright infringement liability. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S.

17 / 21

913, 930 (2005). Contributory liability of third parties in copyright infringement extends to "one who distributes a device with the object of promoting its use to infringe copyright." *Id.* at 936–37. As a result, the theory of recovery relies upon an existing copyright. *Id.* at 929.

Here, Plaintiffs do not allege that they obtained a copyright for "Greasy Frybread" before Defendants' alleged wrongful conduct. This omission proves fatal to their claims for vicarious infringement and contributory infringement. The Copyright Act would preempt any such claim based on state law, and the absence of a copyright renders the claims defective.

In connection with these causes of action, Plaintiffs cite to *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159 (2d Cir. 1971). But that case affirmed that secondary copyright liability can extend to persons who have knowledge that their agents committed copyright infringement. *Gershwin Pub. Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1163 (2d Cir. 1971). That doctrine proves inapplicable here. Plaintiffs also rely on *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), but in that case, the plaintiffs asserted valid copyrights that protected their musical recordings. *Fonovisa, Inc.*, 76 F.3d at 261. Here, Plaintiffs do not allege that such copyright protection existed when they filed this lawsuit.

## V.    Motion to Amend

Plaintiffs request leave to file a Third Amended Complaint.

Under Federal Rule of Civil Procedure 15(a), leave to amend should be "freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962). But "[t]he decision to grant or deny a motion to amend is entrusted to the sound discretion of the district court." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994). "A district court acts within its discretion when dismissing a motion to amend that is frivolous or futile." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999); *see also Jamieson v. Shaw*, 772 F.2d 1205, 1209–11 (5th Cir. 1985) (noting that futile amendments include those that lack a legal foundation or were presented in prior versions of a complaint).

Here, Plaintiffs argue that their proposed amendment would "(1) incorporate new facts and expert evidence developed after the filing of the Second Amended Complaint, (2) clarify the bases for jurisdiction and venue, and (3) streamline and conform their pleadings to evidence now before the Court." (Mt. to Amend, Doc. 79, 1)  They represent that the amended complaint would include "new evidence" in the form of an updated expert report that would "substantiate[ ] allegations that Defendants' song 'Enough (Miami)' interpolated and plagiarized key compositional elements from Plaintiffs' original musical work 'Greasy Frybread.'" (*Id.* at 2)  The proposed complaint includes new claims for conversion of intangible property and "Interpolation and Misappropriation of Musical Work."[7] (Proposed Third Am. Compl., Doc. 79–1, 3–4)  But aside from conclusory statements, Plaintiffs do not elaborate on the factual bases of these new causes of action.

In opposition to the Motion to Amend, Defendants argue that Plaintiffs have received leave on two occasions to amend their pleading, and that the proposed amendments would be futile because they do not cure the defects within the existing causes of action and present no viable new cause of action.

The Court concludes that Plaintiffs' proposed amendments would be futile.  As Defendants note, the Plaintiffs' proposed amendments do not cure the deficiencies in the claims within the Second Amended Complaint.  The reasoning in this Opinion and Order would apply equally to the causes of action that Plaintiffs currently allege and that they would maintain in their new pleading. As to the new claims for conversion of intangible property and interpolation and misappropriation of musical works, the doctrine of preemption would apply.  *Daboub* expressly found that the Copyright Act preempted a conversion claim under Texas law. *Daboub*, 42 F.3d at 289.  And while the Court found no Texas caselaw recognizing the distinct claim of misappropriation of musical

---

[7] The proposed pleading also removes the causes of action for Contributory Infringement and Vicarious Infringement.

19 / 21

works, the nature of the purported claim renders clear that preemption under the Copyright Act would apply.

## VI.    CONCLUSION

For these reasons, the Court concludes that Defendants have demonstrated that the Court cannot exercise personal jurisdiction over Defendants.  In addition, even if personal jurisdiction existed, each of Plaintiffs' causes of action would be subject to dismissal for failing to state a claim upon which relief can be granted.

As a result, it is:

**ORDERED** that Defendants' Second Renewed Motion to Dismiss (Doc. 66) is **GRANTED**;

**ORDERED** that Plaintiffs' Motion for Leave to File Third Amended Complaint (Doc. 79) is **DENIED**; and

**ORDERED** that Plaintiffs Joshua Fraustro and Miguel Aguilar's causes of action against Defendants Belcalis Almanzar, Atlantic Recording Corporation, and Warner Music Group Corporation are **DISMISSED WITHOUT PREJUDICE** for lack of personal jurisdiction.

In addition, the Court's resolution of the Second Renewed Motion to Dismiss also defeats Plaintiffs' request for emergency injunctive relief and for an expedited discovery schedule.  As a result, it is also:

**ORDERED** that Plaintiffs' Second Motion for Expedited Preliminary Injunction (Doc. 86) is **DENIED**;

**ORDERED** that Plaintiffs' Motion to Compel Discovery and for Expedited Discovery (Doc. 89) is **DENIED**.

It is also **ORDERED** that Defendants' Motion to Strike Plaintiffs' Supplemental Memorandum in Support of Personal Jurisdiction (Doc. 97) is **DENIED AS MOOT**; and

**ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Memorandum Out of Time and Response in Opposition to Defendants' Motion to Strike (Doc. 98) is **DENIED**.

Signed on March 30, 2026.

_____
Fernando Rodriguez, Jr.
United States District Judge